Menzies vs. Dodd.

ERROR to the Circuit Court for *Rock* County.

*J. A. Sleeper*, for plaintiff in error.

*Sloan, Patten & Bailey*, for defendant in error.

---

## MENZIES VS. DODD.

A delivery and acceptance of goods (or a part of them) sufficient to render valid a contract of sale as between the vendor and vendee, under sec. 3, ch. 107, R. S., distinguished from that delivery and actual and continued possession required by sec. 5 to render a sale or assignment valid as against creditors or subsequent purchasers in good faith.

In a contest between a prior mortgagee of chattels, whose mortgage had not been renewed at the end of the year, and a subsequent mortgagee in good faith and for a valuable consideration, without notice, the former claiming to have taken possession before the second mortgage was made, and before the end of the year, it appeared that the property, which consisted of stacks of wheat, had been delivered to him *only by words* of delivery, but had remained upon the mortgagor's land and under his actual control.  *Held*, that there was no such delivery as the statute (sec. 5) requires.

APPEAL from the Circuit Court for *Rock* County.

Action to recover possession of six stacks of wheat, alleged to be the property of the plaintiff, and being, at the commencement of the action, "on the farm occupied by Elizabeth Bishop and Godfrey H. Bishop," in said county. The plaintiff obtained possession under the statute. The facts, as stipulated between the parties at the trial, were as follows: The plaintiff had a chattel mortgage upon about 70 acres of wheat growing upon the farm of Mrs. Bishop, which was filed in the proper office, May 16, 1861, and was for $434 and interest. The defendant took a mortgage upon the wheat in stacks on the 19th of May, 1862, to secure the payment of a note of same date, at three days, for moneys lent Mrs. Bishop at various times during the three years preceding, which, with interest, amounted at that date to $213; which mortgage was duly filed. On the 27th of the same month he took possession of the stacks for the purpose of selling the same to satisfy his claim. The plaintiff admitted that his mortgage had not been renewed, but claimed that he had taken possession of the property before the year expired, and it was agreed that this was the only question to be tried. On this question the plaintiff's son testified that Godfrey H. Bishop acted as agent for his mother as to matters connected with the farm; that witness and plaintiff went to the farm before April, 1862, and plaintiff told Bishop he would like to get possession; that Bishop then said, "*Mr. Menzies*, I give you possession of that wheat, in presence of your son;" that they were then standing and looking at the stacks, within about 40 rods; that plaintiff, shortly after, requested one Bacon, who lives on an adjoining farm, to take charge of the wheat and see that it was not destroyed or taken away, and also to thresh it; that the 28th of May was set for the threshing, and plaintiff, witness and Bacon went to the farm for that purpose; that Bishop then claimed that the defendant had a mortgage on the wheat. The plaintiff, in his own behalf, testified to Bishop's saying to him, within sight of

the stacks, "I give you possession of the wheat here in presence of your son," and added: "I spoke to Bacon several times to thresh the wheat; but Bishop managed to put it off. The last of April or the first of May, my son and I went again to see the wheat. We called on Bishop for a sample, to see what I could get for it. We went down to the stacks, and he gave me a sample. I took it to Milton and tried to sell the wheat. I offered it to the defendant, and he claimed it as his." On cross-examination he said: "When I showed *Dodd* the samples, and he claimed the wheat, I said it was mine. Don't know that I said anything about the mortgage, or the possession. I had talked with Bacon, both before and after this, about threshing the wheat. Bishop and his mother continued to live on the farm the same as before. The stacks remained on the farm as when they were put up." There was a further stipulation as to the value of the wheat and the damages for the taking.

The court directed the jury to find for the defendant. Verdict and judgment accordingly; and the plaintiff appealed.

*Sloan, Patten & Bailey*, for appellant, contended that the plaintiff, before the expiration of his mortgage, had become invested with the actual possession of the wheat. *Jewett v. Warren*, 12 Mass., 300; *Rice v. Austin*, 17 id., 205; *Olyphant v. Baker*, 5 Denio, 379; *Chaplin v. Rogers*, 1 East, 192; *Wooster v. Sherwood*, 25 N. Y., 278; 2 Kent's Comm., 502–4. 2. The facts admitted and proved tend to support the action, and should have been submitted to the jury. *Barden v. Smith*, 7 Wis., 439; *Johnston v. Hamburger*, 13 id., 175; *Dodge v. McDonnell*, 14 id., 553.

*Bennett & Cassoday*, for respondent, contended that *Menzies* could take possession of the wheat so that it could not be legally mortgaged by Mrs. Bishop to the defendant, only by removing it from the premises. *Gleason v. Day*, 9 Wis., 498; *Young v. McClure*, 2 Watts and S., 150; *McBride v. McClelland*, 6 id., 95; *Travis v. Bishop*, 13 Met., 304; 16 Pick., 33, 462;

*Smith v. Moore*, 11 N. H., 65; id., 288; *Rhines v. Phelps*, 3 Gilman, 455; *Camp v. Camp*, 2 Hill, 628; *Otis v. Sill*, 8 Barb., 102; *McCurdy v. Brown*, 1 Duer, 107; *Rice v. Austin*, 17 Mass., 197; *Thornton v. Davenport*, 1 Scam., 296; *Russell v. Fillmore*, 15 Vt., 135; 5 Vt., 36; 2 Kent's Comm., 721–43.

*By the Court*, DIXON, C. J. When the question arises as to what constitutes a sufficient delivery of goods and chattels upon a contract of sale, I think a distinction is to be taken between the rights of the vendor and vendee, and those of creditors of the vendor and subsequent purchasers from him without notice. Such distinction is plainly recognized in *Butterfield v. Baker*, 5 Pick., 525. In other words, I think the distinction is between what constitutes a delivery and acceptance of the goods, or a part of them, under the second sub-division of the third section of the statute of frauds, and what constitutes an immediate delivery followed by an actual and continued change of possession, under the fifth section. R. S., ch. 107. By attending to this distinction, I think any apparent conflict in the decided cases is easily reconciled.

The authorities cited by the plaintiff's counsel to sustain the delivery in this case, are *Chaplin v. Rogers*, 1 East, 192; *Jewett v. Warren*, 12 Mass., 300; *Rice v. Austin*, 17 Mass., 205; *Olyphant v. Baker*, 5 Denio, 379; and *Wooster v. Sherwood*, 25 N. Y., 278.

*Chaplin v. Rogers* was an action by the vendor against the vendee for goods sold and delivered; and the question was upon the seventeenth section of the English statute, which is our third section. The plaintiff had sold the defendant a stack of hay, the price of which was above ten pounds, and there was no note or memorandum in writing of the contract, and no part of the purchase money had been paid by the defendant. The plaintiff was put to the proof of the delivery of the hay, which he maintained by showing that the defendant had sold part of the hay to one who had taken it away.

This was held sufficient· to prove that the defendant had the possession; inasmuch as he had made a valid sale of the hay, and dealt with the property as his own. Lòrd KENYON observed, that where goods are ponderous and incapable, as these, of being handed over from one to another, there need not be an actual delivery; but that it may be done by that which is tantamount, such as the delivery of a key of a warehouse in which the goods are lodged, or by delivery of other indicia of property. This is no doubt the correct rule of law in such cases, where the articles sold are ponderous or bulky, and incapable of actually being handed over from one to another.

*Jewett v. Warren* was also an action between the vendor and vendee; or, what is the same thing, between the vendee and the administrator of the estate of the vendor, who had died. The administrator stood in the place of and represented the vendor. It was trover by the vendee against the administrator for a quantity of logs. The deceased vendor had executed a bill of sale of the logs, and I do not see how any serious question could have been made in the case. The logs were rafted at a mill, in a boom, and so remained until the administrator inventoried and took possession of them as part of the estate. It was held that there was all the delivery which could have been usefully made of property of that nature.

*Rice v. Austin* was the case of an attaching creditor; and it was held that the plaintiff, the consignee of the timber, was in the actual possession. It was very clear that Lindsay, the debtor, was out of possession, and had lost all control over the property.

*Olyphant v. Baker* was also a case between vendor and vendee. It was *assumpsit* for goods sold and delivered. The contract was in writing and signed by the defendant, and the question was, whether the barley had been weighed so as to ascertain the quantity and pass the title to the defendant.

*Wooster v. Sherwood* was trover by the plaintiff for a quantity of barley purchased by him of one Haight. The defendant

had come into possession by purchase from one Camp. Wooster bought sufficient barley of Haight, a brewer, "to make malt enough, to be made in the brewery," to pay a sum of money then *advanced* by Wooster. Wooster did not remove the barley, but it remained with Haight until he sold the brewery and contents to Camp, with notice of the facts and subject to Wooster's rights. Camp sold to Sherwood, who had no notice of Wooster's claim. The contract of sale from Haight to Wooster was in writing and signed by Haight, so that the case presented no question under the third section of the statute of frauds. It was a good sale as between Wooster and Haight, and the latter having sold to Camp with full notice of Wooster's rights, Camp acquired no interest in the property, and, of course, could transfer none to Sherwood. It was not the case of property remaining in the possession of the vendor, and sold by him to a *bona fide* purchaser, or attached by his creditors.

The case at bar differs from all these, in this, that it is a contest between the plaintiff, a prior mortgagee of the property, who had permitted his mortgage to lapse for want of the affidavit prescribed by the fifth section of the act regulating chattel mortgages, and the filing of the same (R. S., ch. 45), and the defendant who is a subsequent mortgagee for a valuable consideration without notice. It is admitted that the year had expired upon the plaintiff's mortgage without renewal by affidavit at the time the mortgage to the defendant was executed and filed; but the plaintiff relies upon the fact that he had taken possession of the stacks of wheat before the expiration of the year. If the plaintiff had so taken possession and held it at the time of the execution of the mortgage to the defendant, there can be no doubt, upon that fact appearing, that he would be relieved from making and filing the affidavit, and that his claim under the mortgage would be good as against subsequent purchasers and mortgagees. *Otis v. Sill*, 8 Barb., 102. The question is, whether the plaintiff did so take and hold the

possession. I think, as against the defendant, who is a "mort·gagee in good faith," that he did not, and under the fifth section of the act regulating chattel mortgages, above cited, that his mortgage is absolutely void as against the defendant. Such was the decision of the Court of Appeals in *Ely v. Carnley*, 19 N. Y., 496, under a similar statute. The question is not whether the delivery to the plaintiff was good as between him and the mortgagor, Mrs. Bishop ; for as between them it may have been sufficient, or as against her the plaintiff's claim may still be good, though the mortgage was not renewed or possession taken by him. *Wescott v. Gunn*, 4 Duer, 107. The delivery and possession required by the third section of the act as amended by chapter 166, Laws of 1859, in order to dispense with the filing of the mortgage or its renewal by affidavit, is an immediate delivery of the whole property and a continued change of possession. *Benedict v. Smith*, 10 Paige, 126. It must be the same clear, unequivocal and exclusive change of possession as is required by the fifth section of the statute of frauds, and under that section I know of no decisions making an exception in favor of ponderous or bulky articles.

: Here there was no actual change of possession.· The stacks of wheat remained upon the premises of Mrs. Bishop and in her possession and control, after the alleged conversation, the same as before. Nothing passed between her, or her agent, and the plaintiff, but mere words. The plaintiff had exercised no dominion over the property, or right of possession, nor had Mrs. Bishop assented to any, previous to the execution of the mortgage to the defendant. On the other hand she continued to assert her title and right of possession. Her mortgage to the defendant was such an assertion. For these reasons I am of opinion that the mortgage of the plaintiff is void as against the defendant.

The objection that the case should have been submitted to the jury, I do not think amounts to anything. There was

nothing to submit to the jury. The admissions of the parties put the facts beyond controversy.

I think the judgment of the court below should be affirmed. Judgment affirmed.