JOHN D. GRANGE, RESPONDENT, *v.* ALDEN L. PALMER, APPELLANT.

*Written contract — altered as to date of performance by an oral agreement — estoppel — design to mislead.*

A contract for the sale of lumber contained the following provision: "Provided always, and this sale is upon this express condition that the said party of the second part shall cut and remove all of said timber on or before the first day of March, A. D. 1887, and any timber not removed by that date shall revert to and become the property of the first part, without abatement from the price herein agreed to be paid." The timber was all cut, but a portion of it was not removed within the time specified in the contract.

The plaintiff on the trial proved, under the defendant's objection, that the time for the removal of the timber had been extended before March first, by an oral agreement of the parties, until the 1st of April, 1887.

*Held,* that the rule that a written contract cannot be altered before breach, by a parol executory contract, is subject to the exception that the time fixed for its performance may be enlarged by parol, where, by reason of such parol extension of time the party claimed to be in default has been induced to forego a strict performance, on his part, of the contract.

That, assuming that the time for the removal of the timber was extended by parol, and that the vendee relied upon such extension and failed to make the extra effort necessary to remove the timber before the time fixed in the written contract, which but for such extension he would have done, that the vendor was estopped from taking advantage of the vendee's failure to remove the timber.

To establish an equitable estoppel it is not necessary to show a design to mislead.

APPEAL by the defendant Alden L. Palmer from a judgment, entered in the office of the clerk of the county of St. Lawrence on the 7th day of May, 1889.

*John C. Keeler,* for the appellant.

*H. D. Ellsworth,* for the respondent.

MAYHAM, J.:

This is an appeal from a judgment entered upon the report of a referee. The action was for the recovery of a quantity of lumber or its value. The complaint alleges the wrongful taking and detention of one hundred thousand (100,000) feet of spruce and hemlock logs, and demands judgment for the recovery of the possession, or

for the value of the same if the possession cannot be obtained. The answer denies the allegations of the complaint and sets up a special contract in writing, and under seal, under which the defendant claims that the title to the logs in question, before the alleged conversion, became the property of one James R. Smith, from whom he claims to have purchased the same and to have been the owner at the time of taking the same.

The referee reported in favor of the plaintiff for the value of the lumber, and judgment was entered upon his report. The two principal questions raised on this appeal are:

*First.* Whether the time for the removal of the timber from the Fox tract, on which it grew, could be extended by parol; and,

*Second.* Whether it was error for the referee, on the trial, to admit parol evidence of an agreement or conversation between the parties, extending the time of the removal of the timber.

The case discloses that, on the 8th day of February, 1883, the plaintiff made a contract in writing with James R. Smith, whereby Smith sold to him all the timber then standing or being upon a tract of land owned by Smith, known as the Fox tract (except a certain small reservation specified in the contract). The contract, among other things, contained this provision: "Provided always, and this sale is upon this express condition, that the said party of the second part shall cut and remove all of said timber on or before the first day of March, A D. 1887; and any timber not removed by that date shall revert to and become the property of the first part without abatement from the price herein agreed to be paid."

The plaintiff entered upon said agreement, cut and removed logs under it, and before the 1st of March, 1887, all the timber in the complaint mentioned was cut and skidded, but some of it was not at that time, drawn off from the Fox tract. On the trial the plaintiff proved, under the defendant's objection, that Smith, defendant's vendor, before he sold to defendant, extended the time for taking off the timber until the 1st of April, 1887, by a parol agreement made with McBane, whom the plaintiff had employed to cut and deliver the same, and also with the plaintiff; and that Smith about the 1st of February, 1887, informed the plaintiff of such extension, and told him he need not get teams for the purpose of completing such removal by the first of March. It is true that Smith denies

these conversations, but the referee has found as a fact that such parol extension was made, and we think the evidence is abundant to sustain that finding. (*Clark* v. *Dales*, 20 Barb., 60 ; *Van Steenburgh* v. *Hoffman*, 15 id., 28.)

But it is insisted by the defendant that if it be assumed that such parol agreement were made, still it would be inoperative and void within the statute of frauds :

*First.* Because it would be a parol agreement, creating an interest in land.

*Second.* Because it is a parol agreement altering, modifying or changing the terms of a sealed instrument before breach, and, therefore, void.

The doctrine that a specialty cannot be varied before breach, by a parol executory contract, while of general and almost universal application, seems to be subject to the exception that the time fixed for its performance may be enlarged by parol, where, by the terms of such parol enlargement, the party claimed to be in default has been induced to forego a strict performance by reason of the agreement of the other party to the contract to extend the time.

In *Burt* v. *Saxton* (1 Hun, 553), the Supreme Court, MULLIN, J., says : " It is well settled in this State, whatever the rule may be elsewhere, that the time of performance of a contract under seal may be extended by parol." In that case the defendant purchased premises upon which the plaintiff had a mortgage then due upon the plaintiff's parol agreement to extend the time of payment of the principal for twenty years. The defendant failing to pay the interest annually the plaintiff brought his action to foreclose for the whole amount of principal and interest, and the court held that the parol extension of time was valid as a waiver of the time fixed in the mortgage ; citing *Clark* v. *Dales* (20 Barb., 42, and 14 Serg. & R., 241), the court add " that a new consideration is not necessary to give validity to an agreement to extend the time of performance ; the waiver is enough for this purpose."

In *Clark* v. *Dales* (20 Barb., 64), BOCKES, J., in delivering the opinion of this court, says : " It was competent for the parties by a subsequent contract to agree on such extension," and, after citing authorities, adds : " Even the time of performance of a sealed instrument may be enlarged by parol, but the enlargement of the

time of performance of an agreement under seal should be regarded rather as a waiver of strict performance; that is, the parties consent to accept performance at a future day."

In *Stone* v. *Sprague* (20 Barb., 509), which was an action of ejectment, to recover the possession of premises contracted to be sold, for failure of the defendant to pay the contract-price; two written extensions of the time of payment and delivery of deed were proved, and on the trial the defendant offered to prove that a short time before the expiration of the last extension the plaintiff agreed by parol with the defendant not to take any advantage of the expiration of the contract, and that he stated to defendant that the lapse of a few days would make no difference with him. This evidence was rejected, and its rejection was held error; and ALLEN, J., in discussing that question in pronouncing the opinion of the court, uses this language: " I think the learned justice erred. It has repeatedly been decided that the time of performing a written contract under seal may be enlarged by parol * * * such an extension is, in effect, a waiver of strict performance of the conditions of the contract," and cites with approbation the language of the court in *Esmond* v. *Van Benschoten* (12 Barb., 367).

The learned counsel for the appellant relies upon the authority of the case of *Boisaubin* v. *Reed* (2 Keyes, 324), as establishing that the plaintiff had no title to those logs. That case holds that where the party had a right to enter upon land for a given time to cut and carry away timber, that he cannot after the expiration of that time cut or remove the same; and if he cuts timber during his time and fails to remove it, he can be enjoined after the expiration of the time from its removal. The soundness of that proposition cannot be questioned; but the case does not contain any element of waiver of a strict performance. The same is true of *McIntyre* v. *Barnard* (1 Sandf. Ch., 55), cited by the defendant. In *Kellam* v. *McKenstry* (6 Hun, 381) the contract provided for peeling all the bark on a certain piece of land, in these words: " They further agree to have said bark all peeled by the 1st day of September, 1864, piled and measured and settled for in full." After the time limited in the contract the owner of the land caused the standing hemlock trees to be peeled and sold the bark to the defendant. The purchasers of the bark under the

contract, which was limited to September 1, 1864; on the 19th day of July, 1867, sold all the bark peeled on the land, including as well the bark peeled by the defendant's vendor as that peeled by themselves, to the plaintiff. The plaintiff sued for the bark, and the referee, after expressly finding that there was no extension of the time, dismissed the complaint, and the General Term sustained judgment entered upon his report.

It is clear from this case there was no extension of the time for peeling and piling the bark, and no pretense of a waiver of a strict performance. There was, as appears by the opinion of Justice MILLER in the Court of Appeals (69 N. Y., 270), some negotiations about an extension of the time, but the minds of the parties never met on any extension, and no extension was given, and that case differs from the one at bar in that important particular. None of the cases above referred to and cited by the defendant hold that the strict performance, as to time of completion, could not have been waived by parol.

The referee having found, from the evidence, that, " in the fore part of February, 1887, plaintiff made application to said Smith for an extension beyond the first of March, in which to get logs off said tract, telling him at the time that if said Smith refused he (plaintiff) would send and get teams, in addition to those McBain had, to draw them off. That said Smith told plaintiff, " You need not send and get any more teams; you can have during the month of March to take your logs off the tract; they are your property, but do not cut any more after the first of March." That Smith gave assurance similar in substance to McBain, and said to him, " I will give you time; you shall not be injured; you can have what time you want," and that plaintiff and his employee or sub-contractor McBain both relied upon such assurances, and by reason thereof did not procure teams and remove the logs from the tract before the first of March, as they would have done but for such extension of time by Smith; he was right in holding that Smith thereby had waived his right to a strict performance as to time, and was estopped by his own act and agreement from insisting on the first of March that plaintiff's right to and interest in the logs left on this tract had ceased.

Assuming, as I think we must, that this finding is supported by the evidence, we have, then, the fact that, on February first, Smith admitted that the timber belonged to the plaintiff, and extended the

time for its removal, and that the plaintiff, relying on that extension, relaxed the effort that he would otherwise have made, leaving some of the timber on the tract, which Smith on the first of March, notwithstanding his previous waiver, assumed to take possession of as his own, and sold to this defendant.

The general doctrine of the law of estoppel is that, " admissions which have been acted upon by others are conclusive against the party making them in all cases, between him and the person whose conduct he has thus influenced, and it is of no importance whether they were made in express language to the person himself, or implied from the open and general conduct of the party." (Herman's Law of Estoppel, p. 336, § 322.)　" That no man shall take advantage of his own wrong, is fully recognized in all courts of law and equity, and is one of the most essential elements in an equitable estoppel, * * * and is founded on the strictest morality." (Id., § 323.) "As a general rule, a party will be concluded from denying his own acts or admissions, which were expressly designed to influence the conduct of another, and did so influence it, and when such denial will operate to the injury of the latter." (Id., § 323 ; *Titus* v. *Morse*, 40 Me., 348.) " It makes no difference in the operation of this principle whether the thing admitted be true or false ; it being the fact that it has been *acted upon* that renders it conclusive." (Herman on Estoppel, 338, § 323 ; *Gillespie* v. *Carpenter*, 25 How. Pr., 203 ; *Calanan* v. *McClure*, 47 Barb., 206.)　In *Dezell* v. *Odell* (3 Hill, 215), COWEN, J., says : " We then have a clear case of an admission by the defendant, intended to influence the conduct of the man with whom he was dealing, and actually leading him into a line of conduct which must be prejudicial to his interests, unless the defendant be cut off from the power of retraction."

This I understand to be the very definition of an *estoppel in pais*, and in the same case, page 222, BRONSON, J., gives the element of an *estoppel* in these words :

" *First*. That he has made an admission which is clearly inconsistent with the evidence he proposes to give ; or the title or claim which he proposes to set up.

" *Second*. That the other party has acted upon the admission ; and,

" *Third*. That he will be injured by allowing the truth of the admission to be disproved."

In *Ripley* v. *The Ætna Insurance Company* (30 N. Y., 164) the court, in discussing the question of an equitable estoppel, uses this language by way of illustrating the rule : " If my tenant agrees to pay me rent on a day named or his lease will be forfeited, and if, before the day, I agree, for a valuable consideration, to waive the condition, I am bound by the agreement. If, without consideration, I agree that he may pay after the day, and he, by reason thereof, omits to pay at the day, I am estopped from enforcing a forfeiture." It is quite true that an estoppel cannot be created ordinarily by mere silence so as to take away a vested right, or to divest the title of the owner of real estate (*N. Y. Rubber Co.* v. *Rothery et al.*) ; but, in this case, PECKHAM, J., says : " To constitute it (an estoppel), the person sought to be estopped must do some act, or make some admission with an intention of influencing the conduct of another, or that he had reason to believe would influence his conduct, and which act or admission is inconsistent with the claim he proposes now to make. The other party, too, must have acted upon the strength of such admission or conduct." (107 N. Y., 316.)

When a party to a contract, who is entitled to a forfeiture in case of non-performance by the other party of a condition therein, by his own act induces the other party to omit strict performance within the time limited, he cannot exact the forfeiture if the party in technical default with reasonable diligence thereafter performs, or offers to perform. (*Kenyon* v. *Knights Templar*, 48 Hun, 285 ; *Leslie* v. *Life Ins. Co.*, 63 N. Y., 27 ; *Ins. Co.* v. *Eggleston*, 96 U. S., 577.) In the case last cited, BRADLEY, J., in delivering the opinion of the United States Supreme Court, says : "Any agreement, declaration or course of action on the part of the insurance company which leads a party insured honestly to believe by conforming thereto a forfeiture of his policy will not be incurred, followed by due conformity on his part, will, and ought to, estop the company from insisting upon a forfeiture, though it might be claimed under the express letter of the contract ; " and this doctrine seems to apply to any interest in real as well as in personal property. " The fact that it is real estate that is concerned, the title to which, and the right in which, are generally to be affected by instruments in writing formally executed, does not prevent the operation of an estoppel." (*Ana Rivas De Herques* v. *Carlos Marti, as Executor*, 85 N.Y., 611.)

Assuming in this case that the referee was right in finding that the time for the removal of the timber was extended by Smith until the first of April, and that the plaintiff relied upon such extension, and failed to make the extra effort necessary to remove the timber before the first of March, which, but for such extension, he would have done, we are of the opinion that Smith and his vendor are estopped from taking advantage of plaintiff's failure to remove the timber. " It is not necessary to an equitable estoppel that the party should design to mislead." (*Blair* v. *Wait*, 69 N. Y., 113–116.) It is enough if, in reliance upon the act of another, the party has been led to omit what otherwise he would and might effectually have done to protect himself. (*Voorhis* v. *Olmstead*, 66 N. Y., 113; *Manhattan Beach Co.* v. *Harned*, 27 Fed. Rep., 484; *Leather Man. Bk.* v. *Morgan*, 117 U. S., 96.)

It would seem to follow that the plaintiff, under the circumstances of this case, did not lose his title to the logs by reason of his failure to remove the same before the first of March, but that his right to the same and the privilege to remove them was extended until the first of April, and that any interference with them by the defendant and his vendor within that time was a violation of the plaintiff's rights, for which he might maintain this action, unless, as is claimed by the defendant, it was error to receive parol evidence of waiver of strict performance and of the extension of the time for that purpose. We think parol evidence was competent, and its receipt by the referee upon that point was not error.

In *Mead* v. *Parker* (111 N. Y., 259), where it was objected that parol evidence of acts and declarations of the guarantor had been received to extend a written guarantee for the payment of a mortgage, PECKHAM, J., in delivering the opinion of the Court of Appeals, uses this language: " This quotation shows that evidence of that nature was admissible upon the question of waiver, and that no one supposed that it was rendered inadmissible for that purpose because of the assumed alteration, by parol, of the contract required to be in writing by the statute of frauds. The evidence in this case was not of such a nature as could be said to alter the contract. It was simply of such a nature as to show that the defendant waived the strict performance of its original requirements." (111 N. Y., 264; S. C., 22 Abb. N. C., 129; *Goodwin* v. *Massachusetts Mut.*

*Life Ins. Co.*, 73 N. Y., 480.) We discover no such errors in the rulings of the referee, in the receipt or rejection of evidence or in his findings or refusal to find, as would justify a reversal of this judgment.

The judgment must for the reason stated be affirmed, with costs.

LEARNED, P. J., and LANDON, J., concurred.

Judgment affirmed, with costs.